## GORDON BROTHERS V. FRANK E. WAGEMAN.

### FILED SEPTEMBER 21, 1906.    No. 14,285.

1. **Constitutional Law: EXEMPTIONS: WAGES.** The act of 1889 for the better protection of the earnings of certain employees (secs, 531c-531f of the code), makes it "unlawful for any creditor of, or other holder of any evidence of debt, book account, or claim of any name or nature" against a certain class of employees to assign, or by any means dispose of, such claim, or to institute or prosecute in this state or elsewhere any action thereon by any process seeking to seize, attach or garnish the wages of such employees earned within 60 days prior to the commencement of such proceeding, for the purpose of avoiding the effect of the exemption laws of the state, and provides that any one violating the act shall be liable to the party injured through such violation "for the amount of the debt sold, assigned, transferred, garnished, or sued upon, with all costs and expenses and a reasonable attorney's fee," and be subject to criminal prosecution. *Held*, Constitutional, following *Singer Mfg. Co. v. Fleming*, 39 Neb. 679; *Bishop v. Middleton*, 43 Neb. 10.

2. **Claim Defined.** A claim is a demand made of a right or supposed right calling on another for something due or supposed to be due. It implies that the right is in dispute and is suggestive of debate, contention and of something left for future determination. An account which one claims to hold against an employee is an account or claim within the meaning of said act.

3. **Assignment of Claim: ACTION.** In an action brought against a creditor under the foregoing provisions, the plaintiff alleged and proved that the defendant claimed to hold an account against him; that the defendant assigned such account to some person unknown to the plaintiff; that thereafter suit was instituted thereon in another state by a certain party other than the defendant claiming to own the account; that in said suit the exempt wages of the plaintiff were attached for the satisfaction of said account. *Held*, Sufficient to make a *prima facie* case under the provisions of section 531e, and this is true although the process under which the wages were attached was irregularly issued and served.

4. **Judgment of Justice's Court:** AUTHENTICATION. A transcript of a justice of the peace to be receivable in evidence need not be authenticated in accordance with the provisions of section 414 of the code which relates to judgments of courts of record. It is receivable in evidence if it conforms to the requirements of section 415 which relates specifically to judgments of justices of the peace of another state.

5. **Evidence examined, and** *held* **sufficient to sustain the verdict.**

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Charles O. Whedon,* for plaintiff in error.

*Guile & Guile, contra.*

ALBERT, C.

This action is grounded on the act of 1889 (laws 1889, ch. 25), entitled "An act to provide for the better protection of the earnings of laborers, servants, and other employees of corporations, firms, or individuals engaged in interstate business," which constitutes sections 531c-531f of the code. The act makes it "unlawful for any creditor of, or other holder of any evidence of debt, book account, or claim of any name or nature" against any such employee to assign, or by any means dispose of, his claim or debt, or to institute or prosecute in this state or elsewhere any action upon such claim or debt by any process seeking "to seize, attach, or garnish the wages of such person or persons earned within 60 days prior to the commencement of such proceedings, for the purpose of avoiding the effect of the laws of the state of Nebraska concerning exemptions." It further provides that any one violating the act "shall be liable to the party injured through such violation of this act, for the amount of the debt sold, assigned, transferred, garnished, or sued upon, with all costs and expenses and a reasonable attorney's fee," and to criminal prosecution and fine. The petition, omitting the formal parts, is as follows: "Comes now the plaintiff, and for

his cause of action against the defendant alleges that
the defendant is a partnership formed for the
purpose of trade and doing business in the county of
of Lancaster, state of Nebraska; that plaintiff is
a resident of Havelock, Nebraska, the head of a family,
and a mechanic employed by the Chicago, Burlington &
Quincy Railway Company, a corporation engaged in inter-
state commerce; that the defendant herein, claiming to
have an account of indebtedness against this plaintiff for
the sum of $21.14, did on or about the 1st day of Febru-
ary, 1904, assign said alleged account of indebtedness to
some person, firm, or corporation unknown to this plain-
tiff in violation of, and for the purpose of, evading the
laws of the state of Nebraska; that on the third day of
February, 1904, one G. Leudtke instituted garnishment
proceedings before A. J. Liddil, a justice of the peace in
and for Jackson county, Missouri, to collect from this
plaintiff the amount claimed to be due on the alleged
account of indebtedness unlawfully assigned by defendant,
and interest, and that wages earned by plaintiff and in the
hands of the Chicago, Burlington & Quincy Railway Com-
pany were garnished, seized and applied to the payment
of the alleged account of indebtedness, interest and costs;
that the wages garnished and seized as aforesaid were
exempt to this plaintiff, and earned less than 60 days prior
to the institution of the garnishment proceedings insti-
tuted by the aforesaid G. Luedtke before A. J. Liddil, a
justice of the peace in and for Jackson county, Missouri;
that the amount of wages garnished and seized as afore-
said is $32.37, which amount, together with $100 attorney's
fee, plaintiff seeks to recover of defendant. Plaintiff,
therefore, prays judgment against the defendant for the
said sums of money, amounting in all to the sum of $132.37,
together with costs of this action." A general demurrer
interposed to the petition was overruled, whereupon the
defendant answered denying generally all the allegations
of the petition. The verdict was for plaintiff, and
judgment went accordingly. The defendant brings error.

It is first contended that the petition fails to state a cause of action, and consequently that the court erred in overruling the defendant's demurrer. The omissions relied upon as sustaining this contention are: (1) That the defendant was a creditor or a holder of some evidence of indebtedness, book account or claim against the plaintiff; (2) That the defendant assigned or transferred its claim, for the purpose of avoiding the effect of the laws of the state of Nebraska concerning exemptions; (3) that the said claim had been assigned to Luedtke, the party who instituted the proceedings in garnishment in Missouri, or that he was the holder thereof or had any interest therein; (4) that the justice of the peace before whom such proceedings were instituted had jurisdiction of the subject matter.

As to the first, it seems to be without substantial merit. The statute covers claims of every name and nature. The word "claim" is defined by Webster as "A demand made of a right or supposed right; calling on another for something due or supposed to be due, as a claim for wages or services." It implies that the right is in dispute, and is suggestive of contention, litigation and something left for future determination. *Prigg v. Pennsylvania*, 41 U. S. 539. Consequently, the allegation "that the defendant herein claimed to have an account," etc., is equivalent to a charge that it had a claim of some nature against the plaintiff.

As to the second, while the petition does not specifically charge the defendant with having assigned such claim for the purpose of avoiding the effect of the laws of the state of Nebraska concerning exemptions, it does charge that such assignment was made for the purpose of evading the laws of the state of Nebraska. The greater includes the less. If the defendant desired a more specific statement in this regard, the remedy was by motion.

As to the third, it is more substantial, and we were at first disposed to hold that it was vital. But section 531e of the code is as follows: "In any proceeding, civil or criminal, growing out of a breach of sections one or two of

this act, proof of the institution of a suit, or service of garnishment summons, by any person, firm, or individual, in any court of any state or territory other than this state, or in this state, to seize by process of garnishment, or otherwise, any of the wages of such persons as defined in section one of this act, shall be deemed *prima facie* evidence of an evasion of the laws of the state of Nebraska and a breach of the provisions of this act on the part of the creditor or resident in Nebraska causing the same to be done." The preceding section makes it unlawful for any person or persons to aid, assist, abet, or counsel a violation of this act for any purpose whatever. Taking into account the entire act, its remedial character and the nature of the transactions against which it is leveled, it is thought it was the intention of the legislature to make the acts enumerated in section 531e *prima facie* evidence of a violation of the statute on the part of the original creditor, every subsequent holder of the claim, and all other persons. This construction is not unreasonable, and imposes no great hardship upon the original creditor or a subsequent holder of the claim. Where a disposition of the claim is made in good faith, and without any intention on the part of the creditor to evade the exemption laws of the state, those facts may be shown to rebut the presumption arising under the statute. This construction appears to have been placed upon the statute early in its history. See *Bishop v. Middleton*, 43 Neb. 10. It is true it opens the door to the practice of imposition upon creditors and the holders of such claims, as it enables unauthorized persons to do certain acts without their knowledge and consent, by which a *prima facie* case may be made against them. But the same may be said of the presumption often said to arise from the recent possessions of stolen property. In defense of both these presumptions, it may be said, experience has taught that the general good resulting from their indulgence far outweighs any occasional individual hardship. Adopting this construction, it was not necessary for the plaintiff to charge that the defendant

had assigned the claim to Leudtke, or that his title thereto was traceable to the defendant, because the fact that suit had been instituted thereon in another state whereby the exempt wages of the plaintiff had been seized raises a presumption of a violation of the act, and, as was said in *Bishop v. Middleton, supra,* "It is not necessary to plead what the law presumes."

The fourth criticism, namely, that the petition contains no allegation that the justice of the peace in Missouri had jurisdiction also appears to be unfounded. The petition shows the institution of the garnishment proceedings in another state whereby the exempt wages of the plaintiff were seized. The amount of the claim is within the jurisdiction of a justice of the peace in this state, and, in the absence of a showing to the contrary, the presumption is that it was also within the jurisdiction of the justice of the peace in Missouri. In short, the petition shows that the very acts prohibited by the statute, and which, when established, make a *prima facie* case against the defendant, were done, and consequent damages. That is all that is required.

The plaintiff offered in evidence what purports to be a transcript of the proceedings had before the justice of the peace in Missouri in the case brought against him there by Leudtke. The certificate of the justice in due form is attached thereto, which is followed by another certificate which is as follows: "State of Missouri, County of Jackson, ss: I, J. L. Phelps, clerk of the county court within and for the county and state aforesaid, the same being a court of record, and having a seal, do hereby certify that A. J. Liddil, who has signed the foregoing instrument, was at the date thereof a justice of the peace within and for Blue township, in the county of Jackson, and duly commissioned to act as such, and that I am well acquainted with his handwriting, and I verily believe the signature thereto to be genuine. In witness whereof I have hereunto set my hand and affixed the (seal) seal of said court at Kansas City, Mo. this 15th day of June, 1904. Jas. L.

Phelps, Clerk, F. J. Kast, Deputy Clerk." The defendant objected to the reception of the evidence on the ground that it was not duly authenticated. The objection was overruled, and this ruling was assigned as error. The argument upon this assignment is based on sec. 414 of the code, which prescribes the manner in which judgments of of a court of record of a sister state shall be authenticated. But the specific provision for the authentication of a judgment of a justice of the peace of another state is in the next section; hence, the argument upon this point is beside the mark. The authentication appears to conform substantially to the latter section and is sufficient we think.

It is also claimed that the transcript is insufficient to show the institution of the garnishment proceedings before the justice of the peace in Missouri because the service of the notice in garnishment appears to have been made by a "deputy constable" who appears to have served it by "declaring to the Chicago, Burlington & Quincy Railway Company," plaintiff's debtor, that it was summoned as garnishee in said proceeding. Section 531e enumerates the acts which, when proved, shall be deemed *prima facie* evidence of a violation of the act in question. Among those acts are "proof of the institution of a suit, or service of garnishment summons, by any person, firm, or individual, in any court of any state or territory other than this state." There the distinction is made between the institution of a suit and the service of process. Where the suit is instituted, and where by process, however defectively served, the exempt wages are seized, as they were in this case, the presumption of a violation of the act arises. It would be a travesty on justice to permit a party to invoke the aid of a court in another state, and by such aid seize exempt wages, and then come in and defend against a violation of the act by showing some irregularity in the service of the process of the foreign court. The suit was instituted before the justice of the peace and was effective for the purpose for which it was instituted. That being true, proof that the suit was instituted makes a *prima facie* case

against the defendant. The defendant offered no testimony. That adduced by the plaintiff is abundantly sufficient to sustain the verdict.

The constitutionality of the act under which this suit was brought is vigorously assailed by the defendant. It was thus assailed in *Singer Mfg. Co. v. Fleming*, 39 Neb. 679, and *Bishop v. Middleton, supra*. It was upheld in the former in an exhaustive opinion, which was adhered to in the latter. We are satisfied with the conclusion reached in those cases and regard the question as settled. The act has been in operation for more than 15 years and, while it has been characterized as harsh and oppressive, yet no case has come under our notice, and we doubt if one can be found, where any person, innocent of an intention to evade the law, has suffered from its provisions. It has proved a wise and salutary piece of legislation, without which the law exempting wages from seizure by attachment or on execution would afford little or no protection to a large class of wage earners.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.